567 A.2d 771

**CITY OF WILKES–BARRE, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (SWAN), Respondents.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 1989.

Decided Dec. 15, 1989.

Donald T. Rogers, Lowery, Ciavarella & Rogers, Wilkes Barre, for petitioner.

Michael A. Brady, with him, Brian C. Corcoran, Hourigan, Klugger, Spohrer & Quinn, P.C., Wilkes Barre, for respondent, Robert E. Swan.

Before DOYLE and BARRY, JJ., and NARICK, Senior Judge.

BARRY, Judge.

This is an appeal from the order of the Workmen's Compensation Appeal Board affirming a referee's decision granting benefits to Robert E. Swan (Claimant), pursuant to Section 301(c) of The Pennsylvania Workmen's Compensation Act (Act).[1]  We reverse.

Claimant joined the Wilkes–Barre police force on April 5, 1967 and was forced to resign on December 21, 1982, after indiscriminately firing his weapon in the police station.  The referee found the following relevant facts:

4.  During his tenure on the police force, the Claimant was a patrolman assigned to a cruiser.  In the early seventies, he began feeling troubled over peoples' problems, and taking their problems personally.  For example, while investigating a suicide and watching the family members' actions, he began crying.  From his exposure to the criminal element, paranoid for his welfare and the welfare of his family, he started building a fence around his home, installed an alarm, and would not allow his children to play in the snow just so he could see if there were any footprints around his home.  He would even go so far to check the dew on the grass and put a thread across a gate in order to tell if it was opened in his absence.  He thought of putting steel plates in the walls of his bedroom and he was plagued by insomnia, arising 12 to 15 times a night checking the locks in his house.

5.  The Claimant's bizarre actions were not only limited to security.  He also became upset over small things on the job such as motorists not listening to traffic directions.

With regard to the cause of Claimant's emotional disorder, the referee found that:

10.  Dr. Anthony Turchetti, a Board certified psychiatrist, examined the Claimant on April 21, 1983 and noted a

---

1.  Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411.

10 year history of alcoholism. After thorough examination, the Doctor noted that the Claimant's fears were concentrated on his job, and these fears manifested themselves in depression, irritability, insomnia, and loss of appetite. At the time of the examination, the Claimant was taking antidepressants and also medication to curtail his drinking. The Doctor's final diagnosis was alcohol dependence, depressive neurosis and mixed personality disorder. During the exam, the Doctor found the Claimant often felt powerless to help victims of crime or accidents, and that he would suffer anxiety attacks when he could not function and his breathing would become erratic. It is significant that there was nothing else in the Claimant's past other than his job that surfaced during the exam. In the Doctor's final opinion, the Claimant's world centered around his job. He did not have the type of personality to be a policeman, in fact, being a policeman was catastrophic to the Claimant. Finally, Dr. Turchetti opined that as of the date the Claimant irrationally fired his gun in the Police Station, he had ceased to act effectively and would have been totally impaired from his employment that date, December 21, 1982.

11. The City of Wilkes–Barre had the Claimant examined by Dr. Robert L. Sadoff, a psychiatrist from Jenkintown, Pennsylvania on May 21, 1984. In addition to a thorough examination, Dr. Sadoff reviewed reports from the alcohol facilities where the Claimant had stayed as well as hospital records and a report of Dr. Turchetti. He agreed with the diagnosis of alcohol dependence and depressive disorder and concluded that it was the pressures of his job that contributed to the Claimant's increased use of alcohol and aggravated his depression.

Based upon the evidence presented, the referee concluded that Claimant sustained his burden of establishing that Claimant suffered a work-related emotional disorder which entitled Claimant to benefits under the Act. The referee's

decision was affirmed by the Board. A timely appeal to this Court followed.

The issue presented for our review [2] is whether the Board and referee erred in finding that Claimant sustained his burden of establishing a compensable, work-related mental disability under the Act.

In *University of Pittsburgh v. Workmen's Compensation Appeal Board (Perlman)*, 49 Pa.Commonwealth Ct. 347, 405 A.2d 1048 (1979), this Court held that a work-related mental illness which is disabling and which is established by competent and unequivocal medical testimony is a compensable injury under the Act. Subsequent case law further establishes that the occurrence of the injury must be adequately pinpointed, *Thomas v. Workmen's Compensation Appeal Board (Atlantic Refining Co.)*, 55 Pa.Commonwealth Ct. 449, 423 A.2d 784 (1980), and the injury cannot be the result of an employee's subjective reaction to normal working conditions. *Hirschberg v. Workmen's Compensation Appeal Board (Department of Transportation)*, 81 Pa.Commonwealth Ct. 579, 474 A.2d 82 (1984). This standard has been applied frequently by this Court, *Pate v. Workmen's Compensation Appeal Board (Boeing Vertol Company)*, 104 Pa.Commonwealth Ct. 481, 522 A.2d 166 (1987); *Andracki v. Workmen's Compensation Appeal Board (Allied Eastern States Maintenance)*, 96 Pa.Commonwealth Ct. 613, 508 A.2d 624 (1986); *Hammerle v. Workmen's Compensation Appeal Board*, 88 Pa.Commonwealth Ct. 486, 490 A.2d 494 (1985), and it is now well-settled that each of the foregoing conditions must be satisfied before recovery will be permitted. For example, in *Pate* we affirmed the Board's denial of workmen's compensation benefits based on a mental disability where the claimant repeatedly had her work rejected by her supervisor. Although we agreed that claimant identified actual employ-

---

**2.** We note that our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed or whether the adjudication is supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

ment events which precipitated her psychiatric injury, we held that the events did not constitute abnormal working conditions.

We are compelled to reach the same conclusion in the present case. Our review of the record discloses no evidence that Claimant was exposed to abnormal working conditions. While we recognize that Claimant was exposed to situations which affected him emotionally, the situations described by Claimant must be expected in his position as a police officer. Pennsylvania law does not permit Claimant to recover for an emotional disorder caused by Claimant's response to normal working conditions.

Accordingly, we are constrained to reverse the order of the Board.

### ORDER

NOW, December 15, 1989, the order of the Workmen's Compensation Appeal Board affirming the referee's grant of workmen's compensation benefits to Claimant, Robert E. Swan, is reversed.