595 A.2d 729

**Sidney BLECKER, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (PENNSYLVANIA HUMAN RELATIONS COMMISSION), Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 4, 1991.

Decided July 19, 1991.

318

Steven J. Schiffman, Harrisburg, for petitioner.

Richard F. Faux, Asst. Counsel, for respondent.

Before CRAIG, President Judge, DOYLE, J., and BARRY, Senior Judge.

DOYLE, Judge.

Sidney Blecker appeals an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's decision to dismiss his claim petition.

On January 25, 1985, Blecker filed a claim petition alleging that he suffered a psychic injury (which rendered him totally disabled) while employed as an attorney by the Pennsylvania Human Relations Commission (Employer). Nine hearings were held from April 18, 1985 through June 25, 1987. On December 13, 1988, the referee dismissed Blecker's claim petition. The referee made the following relevant findings of fact:

6. In January 1984 the defendant issued new performance standards for the attorney's [sic] and litigation was a key factor for the performance evaluation process and an attempt was made to define commitment to affirmative action.

. . . .

11. On November, 8, 1984, a performance evaluation was given to the claimant. . . .

12. Claimant is alleging that upon receiving the performance evaluation and its marks, one of which had the

claimant marked in the middle fair for affirmative action, that claimant suffered a reaction to said evaluation and required medical attention.

13. Claimant had had difficulties with his home and family life and had required the treatment and counseling care of Dr. Altaker *prior to* November 8, 1984. (Emphasis added.)

. . . .

26. After a careful review of all the evidence in the record this referee finds:

a) claimant suffered a subjective reaction to the poor evaluation report given by his supervisor of claimant's performance of work and this was not causally related to his employment and therefore not compensable.

b) claimant was performing his normal and usual job duties at the time of the evaluation and therefore any psychiatric condition was not causally related to his work or any stress or unusual activities.

c) the testimony of defendant's witnesses were [sic] credible and the witness for claimant incredible and incompetent.

Blecker entered into evidence the deposition of his psychiatrist, Dr. Lawrence Altaker, and the deposition of his psychologist, Dr. Stanley Schneider. Dr. Altaker testified that Blecker suffers from an adjustment disorder with anxiety and obsessive personality disorder; he unequivocally opined that the adjustment disorder was caused by the performance evaluation Blecker received on November 8, 1984. Dr. Altaker also testified that Blecker is currently totally disabled. Dr. Schneider corroborated the obsessive personality diagnosis and concluded that this condition was exacerbated by the receipt of the performance evaluation.

■ Blecker contends that (1) the referee erred in finding that he suffered a subjective reaction to his poor performance evaluation and that the event was not causally related to his employment, (2) the referee erred in determining that he was performing his normal job duties at the time of the

performance evaluation, (3) the referee failed to address his claim of a new injury or aggravation of a preexisting injury when he was forced to take disability retirement on October 16, 1985, and (4) the referee made findings of fact unsupported by the evidence and failed to make other necessary findings.[1]

Because we agree that one critical finding is unsupported and that the referee failed to make any findings on certain evidence which we deem crucial, we shall vacate and remand.

■ First, Blecker argues that the referee erred in finding of fact No. 13 that Blecker "required the care and treatment of Dr. Altaker [his psychiatrist] *prior to* November 8, 1984." (Emphasis added.) We agree. There is absolutely no evidence in the record to support such a finding and in fact, the only evidence on this point clearly demonstrates that Dr. Altaker's first encounter with Blecker occurred on November 27, 1984. Further, this unsupported finding may very well be harmful error since the referee concluded that Blecker's breakdown was unrelated to his employment. Such a conclusion could certainly have been premised on the referee's mistaken belief that Blecker suffered from psychiatric problems *before* the incident at work occurred. Therefore, because this finding is not supported by substantial evidence and because it may be prejudicial, it must be vacated.

■ Blecker also argued below and argues on appeal here that the rendering of the performance evaluation was abnormal not only because its rating was unjustifiably low, but also because new performance standards were retroactively applied to him. It is undisputed that the performance evaluation examined Blecker's work from May of 1983 to May of 1984. New performance standards for attorneys

---

1. We will affirm the adjudication unless we find that constitutional rights were violated, or an error of law committed, or that any finding of fact necessary to support the adjudication is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

were implemented in January of 1984. The new standards required every attorney to try a minimum of five public hearings per year and appeared to emphasize litigation skills. Even if the record did not demonstrate (and it does) that Blecker performed very little litigation while working for Employer, the *retroactive application* of performance standards to him *could* arguably create an abnormal working condition. Because the referee made no finding on this issue, focusing instead merely on the performance rating itself, we must remand for a determination of whether the retroactive application of new performance standards to Blecker is, in the situation presented, an abnormal working condition.[2] It must be understood, however, that an *unreasonable decision* by an employer is not an *abnormal working condition* per se.

We note that a psychic injury case is highly fact sensitive and requires a determination as to whether, under the particular facts of the case, a claimant was subjected to abnormal working conditions; this inquiry and conclusion is a mixed question of law and fact. *Driscoll v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 134 Pa.Commonwealth Ct. 206, 578 A.2d 596 (1990). The claimant must prove either (a) that actual extraordinary events occurred at work which caused the trauma and that these specific events can be pinpointed in time, or (b) that abnormal working conditions over a longer period of time caused the injury. *Cadden v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 135 Pa.Commonwealth Ct. 195, 579 A.2d 1378 (1990). He must also establish that his psychic injury was aggravated or precipitated by actual employment events; a subjective reaction to being at work and being exposed to normal working conditions will not support a finding that a claimant sustained a compensable

---

2. We note that Employer in its brief does not dispute the retroactive application of the standards. Instead it argues that they were retroactively applied to all attorneys. This point is legally irrelevant. The retroactive application of performance standards could arguably be an abnormal working condition even though it is not discriminatorily implemented.

injury. *Moonblatt v. Workmen's Compensation Appeal Board (City of Philadelphia)*, 85 Pa.Commonwealth Ct. 128, 481 A.2d 374 (1984). It is these principles which the referee must apply in making his findings on remand.

Finally, Blecker takes issue with finding of fact 26(c) which states that "the testimony of defendant's witnesses were [sic] credible and the *witness* for the claimant incredible and incompetent." Blecker, in addition to his own testimony, presented the testimony of his wife, Elaine Blecker, and Ellen Barry, a co-worker. Also Blecker introduced into evidence the deposition testimony of two medical experts. Thus, it is unclear which single witness for Blecker the referee disbelieved.[3] Therefore, on remand the referee is directed to clarify this finding.

In summary, finding No. 13 is vacated and the case is remanded for a determination based on the presently existing record as to whether the retroactive application of new performance standards to Blecker constituted an abnormal working condition and for clarification of finding 26(c).

### ORDER

NOW, July 19, 1991, finding No. 13 is vacated and the case is remanded for a determination based on the presently existing record as to whether the retroactive application of new performance standards to the Claimant constituted an abnormal working condition and for clarification of finding 26(c).

Jurisdiction relinquished.

BARRY, Senior Judge, concurring.

I agree that we must remand for a determination of *how and to what extent* the new performance standards were used in rating Mr. Blecker's work. I write further, however, to express my opinion that whether a claimant encounters abnormal working conditions is a question of law and

---

3. The finding may also be merely a typographical error and perhaps the plural version of witness was intended.

not a mixed question of law and fact. *Archer v. Workmen's Compensation Appeal Board,* 138 Pa.Commonwealth Ct. 309, 587 A.2d 901 (1991). Only after the referee makes findings of fact on this point can we perform appellate review and decide the legal question of whether abnormal working conditions were present.